Thank you, Your Honor. Matthew Hoffman for Plaintiff Roderick Teis, who is here today. I would like to reserve five minutes for rebuttal, please. Very well. May it please the Court, I would like to discuss two main points today. First, Rod did not speak for the government. As the Supreme Court and Kennedy made clear, official duty speech is speech at the behest of the employer. Rod's personal messages in his office are just that, personal. Intermountain allows employees the freedom to decorate their offices with all manner of personal speech. It doesn't direct, restrict, or forbid personal messages in employee offices. So naturally, employees display all manner of photos, books, posters, and even ideological speech. But Kennedy invalidates the District Court's holding that personal speech somehow morse into the government's speech just because students may see it. Second, Intermountain has no evidence to meet its burden to show disruption to the services it provides to the public. Rod displayed Johnny the Walrus for two years. There is no evidence of missed appointments, students asking for a different social worker, or Rod being unable to do his job. No student or parent ever complained about it. Indeed, Intermountain didn't even know about Johnny the Walrus until Rod mentioned it during an interview. Only a single offended teacher criticized the religious viewpoints of he is he and she is she, and later coordinated a setup to have Rod further disciplined. Neither is there any forecast of reasonable disruption. The innocuous covers of Rod's books express a truthful, positive message. The books conveyed the same message taught in Legrand's science and English classes. So it makes sense that none of the four students that read he is he and she is she were uncomfortable with them. This Court should reverse with instructions to enter a preliminary injunction favoring Rod. First, on the official duties point, Coach Kennedy's case controls here. In that case, both Kennedy and Rod, in this case, spoke within the school environment. They were still on duty. They spoke in front of students, yet they spoke at a time when other teachers, other employees were free to attend to all manner of personal tasks. In Coach Kennedy's case, they're free to send text messages, talk with family, check the sports score on their phone, or a variety of other personal things. In Rod's case, Intermountain established that teachers and employees are free to decorate their office is with personal speech. So, counsel, let me ask you a few questions about that. So the 11th Circuit in the Wood case reads Kennedy more limited, I think, than you would read it. What is your take on that case? Is that because that was Wood wrongly decided in your view? I don't think Wood was necessarily wrongly decided. I think it does have some language about Kennedy. But Wood, if you look at it, it's in-class teacher speech in front of students. So there the teacher wanted to write pronouns on the board, wear the pin. So that is speech that's directly to students within the class. But here we have Intermountain displays off or allows employees to display the decorations as personal speech. Well, I think the issue here, though, is that, as I see it, is that viewpoint discrimination is allowed if it's government speech. And so then the question is, is this government speech or not under Garcetti and under I forget the name of the other case we have, which has like the factors you look at, another one of these factor tests. So your view, though, under Wood is that Wood is distinguishable from this case because why? Because it's in-class speech directly to students. Well, wasn't. I'm trying to see the difference here, because this was in his job. His job was to meet with students to administer some examinations, if I understand it correctly. Correct. How is that different than a teacher in a classroom in this situation? Because in that case, in the Wood case, the Florida law made it so that the teacher's official duties were not to include these things when she's in the classroom. But in this case, Intermountain's policy allows the decorations as personal speech. So that's like and it's a personal form, kind of like Coach Kennedy praying at midfield. So even though that speech is in front of students, Coach Kennedy spoke in front of students, just because it's there in his office doesn't immediately transform into government speech. Because, Your Honor, you talked about the factor tests, but what it ultimately boils down to in Kennedy is speech at the best of the employer. In Kennedy, the court in plain of itself, Kennedy agreed not to engage in prayer in the locker room, for example, during, you know, before the game, right? Because even though the locker room was in the scope of his employment duties. So in this case, why is the office, at least during the period in which Mr. Tice is counseling students or testing them, right, is engaged in the scope of his employment? And that, my understanding is that was the restriction that was not enjoined here, right? It was that the requirement to just remove the books during that period of time when he is actively engaged in the scope of his duties. Well, I'd say first, Your Honor, I don't think that's what the district court's injunction went to just when it was in front of students. But Intermountain's policy was that he had to remove them at all times because even to co-workers, they could appear to be a bias. Right, but you're appealing that part of me. Yeah, that's correct. So because Coach Kennedy, I think the distinguish you make between Kennedy shows how it applies in this case, because in Coach Kennedy's case, when he's talking to the students as part of the post-game talk, that is part of his official duties. That's what the employer defines. It's not a reasonable observer test based on what people might interpret. I think that's what Kennedy makes clear. And Intermountain here defines the office declarations in Defendant Van Nuys' declaration as to be personal speech, as speech that's not part of the employment responsibilities. I think you could think of it this way. If Rod never posted the books up, he didn't have the duty to put them up. If he didn't have to decorate the office with specific things. So that really can't be part of his employment duties. Now, there can be other ways that you would get to speech that might be disruptive. I think that comes in under Pickering. But after Kennedy, the employment duties inquiry defines the public or the private speech. I recall though, and I can't remember the form, but that Mr. Tice said that the reason why he displayed the books was to make the students feel more comfortable. I think so. And that's what Intermountain allows for office declarations. That doesn't turn it into the employment duties that he wants to make his office more kid-friendly and express a positive message. Because again, Intermountain never made that part of his employment duties. And they could, you know, this doesn't have to be a big issue because they could redefine what is allowed in the office. It could be only, you know, class speech. There could be no declarations allowed at all. That's their authority as an employer. But that's not what they did in this case because when they allow all the employees to have the personal speech in their office, it can't just become official duty speech after the fact when students might see it. I think that's what, you know, that repeats the kind of the Johnson era that the Supreme Court reversed. He's speaking to the students during their appointments. Is he acting within the scope of his official duties? When he's giving them a test, yeah. Yes, I agree. When they come in, is every conversation he has with that student part of his job duties when they're coming into his office to be tested? Is he acting within the scope of his employment? I don't think every conversation. No. I think, you know, schools operate with all manners of personal speech. You know, teachers or social workers talk about the sports game last night. I don't think that that personal speech is official duty speech. And that's what Kennedy says. Not all speech in the office environment is official duty speech. You can't have this accessible. I'm asking that student comes in for an appointment from the time they come in for an appointment to the time they leave. Is he acting within the scope of his employment? I think that's part of his duties, yes. But again, the books were defined by Intermountain as not part of his official duties. So even though they sat on the bookshelf there, that is not him speaking on behalf of Intermountain. That's the allowed personal declaration. I mean, a little part of the difficulty here is, right, part of your claim rests on that being speech, right? Communication to the students, not just, you know, paint color, right? And so it's communication. That's the definition of speech. And at that time, in the scope of that office visit, that is communication. In fact, it was intended communication to the students. Is that right? Yeah, they express a message. I agree. I agree. But I think you can't treat that everything he says within the office environment is official duty speech because Intermountain didn't define it as part of his duties. And students would be exposed to, I think, all manner of these messages, you know, the pro-union or the pro-LGBTQ speech, which Intermountain allowed. But that, again, did not become part of their official duties just because students might see it. It's not, you know, in the Fifth Circuit case, Barber v. Rounds, it's not the visibility-based test. It's not just the fact that it was speech in the office environment because, you know, the record shows he's not using these books as part of official duties. They do communicate a message. They are on the bookshelf behind him or on his I think the fact that Intermountain can come in here after the fact and censor that speech is a very broad rule that would allow, you know, eat up wide swaths of public employee speech. You know, in another school district, it could be the rainbow ally flag sticker that could be stopped as official duty speech just because it's on the teacher's desk. And schools can have policies about these, but the policy here established that it was personal speech. Let me ask you this, I anticipate an argument they may make, so I want to give you a chance to hit it now. You know, let's say a teacher did something completely off the rails, and I'm not saying that's what happened here, but, you know, some Jeffrey Epstein type, they want to talk to kids about that. What could the school do to prevent them from doing that under your theory? Well, if it's during, you know, curricular time when the math teacher says, when the math teacher's duty is to teach math, then you say you can't talk about Epstein. That is part of your official duty is to teach math. That's not what this is about. So I think, you know, defining the scope of duties, and as we talked about before, intermounting could have another policy where they didn't allow office decorations or limited to certain things. Right, but I mean, just in the fact of this case, let's say a student goes in, and let's say Mr. Tice is subbed out, he gets to take vacation, so he's on vacation, so they have the sub who fills in for Mr. Tice. And that person puts up, you know, books about Jeffrey Epstein, and he puts them in the same places that the he, is he, and she, and she's books are put up. Could the school stop him from doing that? Yeah, I think that that goes, well, they could do it ex-ante with the policy, or, and they could do it after the fact, or based on reasonable forecasts of disruption under Pickering. So yeah, I think the school's not. So it would be a Pickering, you think that would be a Pickering analysis as to whether they could pull the books there, not a, this is government speech or not government speech. Under the facts of this case, yes, because Intermountain has, has defined decorations as personal speech. They could have a different policy. But here, once you're in that land, you can't, you know, after the fact, stop these, these books from going up when other teachers have other ideological speech that's allowed. But your view would be, though, under Pickering, then you could analyze whether putting the Jeffrey Epstein books would be so disruptive that they could be pulled. So your view is the school could still pull them just under a different line of reasoning. Yeah, absolutely. I mean, this, the schools are not powerless in these situations. I think they have a lot of control defining it on the front end, or are you going to the reasonable forecast of disruption? And they can regulate that in the office environment. So on that, that's where the heckler's veto thing comes in. So I understand, this is what I anticipated your argument was, that you can, you can do it on the front end by, by having a very dystopian type thing where nobody gets to put up decorations, right? So that, that is one way that, if you don't, I mean, literally, if you don't like certain viewpoints, you can just say, there's this, this is a no speech zone, no private speech zone. So you could, they could do that on the front end. And you agree with that, right? They could do that. I mean, It didn't do that, but your argument is they didn't do that. No private speech allowed. You can't wear t-shirts that say Def Leppard or whatever, right? You know, and then, and then on the, on the back end, if somebody puts up a Nazi symbol, you know, they decide they're going to, you know, put up a Nazi symbol as their, in theory, they could try to do something under Pickering balancing. The question I guess is, and I think that's right, but, and I think that's what our case law says, but, but on the back end, how do you, what do you do with a heckler's veto in that? Because, you know, at the end, on the facts here, it does seem like basically they decided to make example out of them after, after the first decision. And so they brought in a, and they, and that makes sense that that's going to happen in today's culture. So what do you, what do you I guess, what does a court do about, how do we distinguish a heckler's veto from, you know, this is going to, this is going to be super disruptive? Because what it does is it kind of incentivizes people to be disruptive, right? That's the problem with, with Pickering. So I think in, in Dodge, the mere disagreement that comes with a controversial viewpoint cannot be disruption. But we, I mean, this is Portland, right? So like, they've learned how to make disagreement into trying to burn down a courthouse. So like, if you, like, but that's the problem, right? Like, they just keep turning up the volume and adding violence and everything until, and so what, what do we, I understand. I'm just trying, I'm just trying to figure out, and Pickering is Pickering, you know, we're, that's, we have this Pickering balancing. I guess your argument would be, we're not anywhere near close to that. If people are lighting, lighting the school on fire in response to his books, then we'll figure out what to do about it at that point. But they weren't doing that yet. No, I think, I mean, there's no evidence of any disruption. There's no evidence of impacted services. And the complaint, it's clear in this case, was just based on the religious viewpoint. So I think we're nowhere near that. You know, Pickering, as your Honor pointed out, is a values-based balancing test. So it's hard to kind of weed out the viewpoint discrimination from there. In other contexts, it's clear that viewpoint discrimination is unconstitutional. But here, there can be some judgments that account for that because the employer's responsibility is to the public. But, you know, there's no credible allegations of actual policy violations here. It really just is targeting the views. Right, but in Damiano, we explained that it is a balancing test, right? And there's a question of how heavy the First Amendment interests are. And in that case, they were high because the employees were talking about public matter outside, largely outside of the school context. It was a website about state policy. Here, we have almost the polar opposite, where it's an in-school office. And at least on this preliminary injunction, we're talking about during the time that an employee is meeting with students. So that is pretty much the opposite of what was presented in Damiano. I see my time is running low, but I'll say, Judge Chung, I don't think it's completely the opposite because content is king in the inquiry here on balancing. And so it's similar content to what's in Damiano. Well, that was a comment about state policy or policy or school district policy. And here, is there a policy or was there a comment on school policy being taken? Not that I'm aware of, but it's religious speech. It's speech on a matter of public debate. The binary view of gender is intermounted and said. So I think it's an important topic. The content is king. It did occur in the office environment, which I think is the safety valve that shows that schools have more authority in the school environment. But that's not dispositive. I mean, there's all sorts of just intro workplace comments like Rankin versus McPherson. It's a Supreme Court case where office speech is still protected speech. It still expresses a matter of public concern, intermounting and seated below. So I think in the pickering balancing, it still weighs high for the content and the circumstances don't detract from that. And I just think that intermountain's ledger is so absent of evidence, which is their burden to show here. They just have the complaint from the teacher, no disruption to the actual services that Rod still has to win in their pickering balancing. Do you want to reserve? I would like to reserve five minutes. Thank you. May it please the court and counsel, Blake Fry for the defendants and appellees. There are some preliminary issues here before getting to the merits, including issues of mootness and jurisdiction. But since we've spent most of the time talking about the merits of the merits, the preliminary injunction motion asked for an order that would allow the plaintiff to continue displaying these books in his office while students were present. And the court denied that motion for a pretty discreet reason. As we've discussed, speech claims by public employees are resolved by pickering and pickering is a sequential test. The first part of that test, the plaintiff has the burden to show that his speech was offered in his capacity as a private citizen and not as an employee, and that it was on a matter of public concern. And if the plaintiff fails to meet that burden, either one of those, then the test ends and the inquiry ends. And the speech can be restricted because if the speech, for example, is spoken in the capacity of the plaintiff's capacity as a public employee, then it's essentially the government's speech and the government can control its own message. And the court here found that the plaintiff displayed the books in his capacity as an employee, and for that reason that he didn't have a likelihood of success on the merits. The standard of review is abuse of discretion, and the court's conclusions of law are reviewed de novo as the law is, not as it should be or it might be in the future. And the findings of fact are reviewed for clear error. So if the court got the law right, the findings, and in this case the finding that the plaintiff was offering these books in his capacity as an employee can't be the basis of reversal unless that finding was clearly erroneous. So the district court found that the plaintiff was acting in his capacity as a public employee, largely by relying on this court's previous decisions in Johnson v. Poe School District, and as that was reiterated somewhat in Dodge v. Evergreen School District. So Johnson v. Poe School District comes from a very similar scenario, and Johnson and Evergreen both make the same point that went up. Can I ask you some, so you know we've got the first question is, is it public concern? And as I recall you have some arguments as to why it's not a matter of public concern. Basically it's such bad speech that it's not a matter of public concern, if I understand understood your argument correctly. But it didn't seem like you really fought that too hard, especially before until. So do you, is it your position that the personal decorations, you know the decorations are in various people's offices, are all government speech? In other words, if they put up and said you know, if they had a picture, put up a picture of Mount Hood, you know, because they thought it was beautiful, right? And they'd hiked up there or something. That those are all government speech? Or is your position that some of those are private speech, but this one's government speech? So that's my first question, I guess. Well, I mean it would vary on, it would depend on the context, it would depend on. Okay, so the answer to my question sounds like is that some can be private speech. So you're not, your position is not that every, every display is public, is public Not everything, but I also want to make the distinction. So what, so what is the distinguishing characteristic? I think you're about to get to that. I think that your distinguishing characteristic is if it's really important or like a, like a really, but is it something that, what makes it government speech in this context? In this case, it makes it not government speech, but it's speech offered in the plainest capacity as an employee. And the basis for... So what is the distinction? Yeah, yeah. And so the basics, the basis for the district court's decision here was, was first of all, he is, he is expressly trying to express a message and that message is against transgender persons or whatever. That's what, that's... Let's just stop and start with that. Yeah. Every time you're trying to express a message, that it becomes then public government speech or, or is it only certain messages? So like if you're trying, if you had up your favorite band, you know, let's say it wasn't a controversial band, you're obviously trying to express a message that you like this band. Would you say that was public speech, government speech, or would you say that was their private speech in a private press? It's not the message in and of itself. It's, my point is that he's expressing a message. So, I mean, there are allegations that these are just decorations that don't express a message. Well, we're here on a speech... No, no, no, no, no. That's not their allegation. They definitely think this is imparting a message. They, they think it's a private message. So that's really important. That's really important because they, they're not distinct, they're not disputing. In fact, they never get past the first step if it, if it's not expressing any message because it's not an issue of, I don't know how it would be an issue of, of public concern. So it's not, I don't think they're saying that it's not a message. I'm trying to figure out what you're, what you want us to make the distinction between when it becomes a pri, assuming it's a message, when it becomes a pri, when it's a private message, I like Mount Hood, I like Def Leppard, right, as opposed to a government message. What, what flips that switch? So this was, this was addressed by this, this court in Johnson versus Poe, and this was also the basis for the district court's decision. So in this instance, right, these were books displayed in the plaintiff's office, his school office during the school day, and he was displaying them to students who were in his office for evaluations. And so what this court said, I mean, that was the basis essentially for the district court's decision here. So is it, it's the talking about them in addition? So if, if he never, if, you know, if a student, I'm just trying, I'm trying to figure out where your line is, because I, if, if, if you just had the books, which would essentially be like a picture then, because nobody's getting in. So it's got a picture, it's a giant walrus, got a picture on the front of it, just sitting there, and a student says, what is that? And he says, can't talk about it. Is that a, is that a government message at that point? Well, how this court resolved this question in Johnson versus Poe way, school district, was that one of the ways you asked, especially in the context of a public school, is whether an observer, like a student in this instance, would reasonably view this speech as being either sponsored or condoned at the very least by the school. And so it's, and the reason for this standard, which is particular to the public school. Okay, so their position is, is you're walking around the school, you see all kinds of offices and decorations up, and those decorations are all private speech, you know, it's Black Lives Matter, various, various messages, and those are private speech. And in fact, they, they, they, they, they get some of their power from the fact that they're private speech. Oh, this teacher leads in Black Lives Matter. If it was just the government's official message of Black Lives Matter, it wouldn't matter, it wouldn't, it wouldn't bear as much weight. And so their position is, why is this different? And that's what I'm trying to figure out, is what makes this different? I don't agree that all those are private speech. Do you think the Black Lives Matter signs are also perceived as government speech by, and the, and the, and the signs that are pro-LGBTQ, that those are, you know, the rainbow flags and stuff that people have up in their carrels? That's all government speech in your view. Yeah, because in that case, the school district could decide that is essentially a speech in the, in the, in the, in those employees' capacity as an employee, and it could control that message because it is the, because it is, that speech is offered in the, those employees' capacity as an employee. And, and by the way, I do want to make the point that there's a lot of allegations about these, this, these other signs. The inner mountain is not in control of these schools and not in control of these other employees. No, but it would matter to the reason, you said the test is what a reasonable observer would think. So like, if, if, you know, if the flag, and then underneath is a little plaque that says, this is my personal views, this is not on behalf of the ex-school district, right? You know, so like, to make it really clear, so the kids are like, okay, this is, okay, that's a private speech lesson learned. And then they go into his office and they see this thing, and, and so it would, it would influence their, it influences the context of which, under which a reasonable observer would evaluate whether these books are government or private speech, the, the environment that these kids are running around in, correct? Well, the, what are the basis for the, the, the court's treatment in Poway of this public school context of being special? Is that school employees have access to a young and captive audience, and that's why ultimately the test comes down to, or one of the, one of the basis the test comes down to in this context is, would a student viewing this speech view it as being sponsored by the school, or at least condoned by the school? And in the example of the other posters, the Black Lives Matter poster, the answer is still, yes, a, a, a student would view that as being promoted or sponsored by the school, and that still makes it employee speech. And yes, the school district. Circularity, because in some ways, if the student is a, you know, very bright student and reads the Ninth Circuit's case law and basically says, on really important issues, we don't, we only allow one side to speak. We don't allow the others. So then it, so because we control the speech, it therefore is government speech. You see what I'm saying? We can say, well, on, on these hot button social issues, you know, abortion, gender identity issues, LBGTQ, because we care so much about that, we will only allow one perspective to be spoken. And by saying we will only allow one perspective to be spoken, you're essentially turning it into government speech. It starts to feel a little bit like, like, uh, circularity there. Like, like, like you're actually bootstrapping it into being government speech by, by saying, well, the government, we only allow one half of the debate, so. Well, here, first of all, I, there is no viewpoint restriction of speech here. We, we have a, an anti-discrimination policy that prevents, uh, any disfavored group from being impugned. Uh, that is a content-based restriction of speech. But even if it had been a viewpoint-based restriction of speech, that's what pickering allows. So in fact, when it comes to employee speech, the, the government, and in this case, a school, is allowed to pick and choose between which messages it wants to allow and which messages it doesn't. Because again, if the speech is employee speech, it does- I understand that under pickering, you'd be able to do the balance. I guess, I guess I'm, you know, before we ever get to pickering, we have to, we have to decide the second question of whether this is public or whether it's private. And the district court, at least, seemed to pretty firmly put, put its flag in the fact that this was public speech, you know, relying on POA, et cetera. So we would never even get to pickering. And I'm still just trying to, trying to figure out, as I understand it, you're saying this is public speech because, um, I, I think it, am I understanding correctly, because I'm a little surprised to hear you say that the Black Lives Matter and all of the personal paraphernalia that, that is around the on this record, that's all public speech. And I guess your, your position is it's all, it's all government speech. It's all, it's all government speech because, um, that's what the school district allows and it doesn't allow. Well, let me jump, I'm sorry, jumping, because I want to make sure I understand him. My understanding was, is that if it's during school hours and it's during instruction of children or working with children, then the district can decide what is being said. Yes. Correct. And then that's the bottom line. Yes. And regardless of whether it's pro this or anti that, it's, if it's government speech, the government gets to make that call. Yes. And that's the, I mean, in your view and in the district court's view, as I understand, that's, that's the end of this case effectively. Well, under pickering, that's the end of it. I would say just for clarity, I think from the bench, what we're talking about is public employee versus personal private speech. It's sometimes talked about as step two of the pickering test. But when we talk about pickering, what we're really talking about is the step five, the balancing test, if it's private, which we only reach if it's private employee speech. Okay. So just for terminology clarity, so we're not talking across each other, what the question is right now, we're at step two or one, actually one. Two. Two. Because first it's public versus private, then two is this. Whether this is private speech or public employee speech. And because if it is public employee speech, if it is speech reasonably attributed to the government, which I think is the test that you're arguing for, or within the scope of employment, whatever test we apply to determine whether this is public employee speech or private employee speech, we stop and we never reach the pickering balancing test. I think what we're asking is, should we stop? And if so, why? Yes. Because, yes. And that was, again, that was the basis for the district court's decision was to find whatever, however, whatever the terminology is. The district court stopped at the finding, essentially, that this was speech in the plaintiff's capacity as an employee. So can I ask you a follow-up question to, to Judge Owens? So as I understood what, what the plaintiffs were saying, they don't, they don't disagree, I don't think, with Judge Owens' view that in the public school system they could, they could ban all private speech. They could do that. I think, you know, I, what I said, the dystopia and, you know, you imagine all the cubicles that are all, no, there's nothing on them at all. As I understand their argument is they could do that, but they have not done that. In fact, what they've done is they've allowed, you know, just like you could say you can, you can't wear shirts with your, with, with your favorite rock band on them if you're a teacher, a teacher, right? Because kids started getting in the fights about their rock bands, you know, it's not like, or whatever. Like, so, so you just can't wear them at all. But my understanding is they're saying, no, you can actually wear your shirt with your rock band on it. And then they're just like, we, we're, you can't wear that particular shirt. And the reason I use the rock band thing is so that you don't imagine that the school has a particular view about what rock band is, is better or not. And so as I understand, they're not disagreeing that, that the school could ban it. It's a question, they're saying the school did not do that. They, in fact, allowed people to decorate, which is, you know, which, which I allow my clerks to do, et cetera, you know, and so once, and once they allowed that, then you can't just say, well, it happened in a school setting and therefore it must be public employee speech. That's my understanding of their argument. What is your, that you have to decide whether or not, was this the sign, was this just a personal sign they put up or, or is this actually something in their duties? The district's, and I mean the ESD, the district's directive here was narrow. It was only that he couldn't display the books while students were in his office. And the students are only in his office for evaluations. And so that was a basis for the district court's opinion. The directive from the ESD was not that he couldn't have these books in general, or that he couldn't have these books when teachers were in his office. The directive was limited to when students were in his office. And the only reason students are in his office are for evaluations. And so that makes this case basically the same as Johnson versus Poway school district. Because the, the students are only in his office for evaluations. This is a school office. It's during the school day. And what the plaintiff is essentially arguing, and I, I think the court picked up on this, is that I could evaluate students in my office under, using my social worker hat, school social worker hat. And when that evaluation is over, I could switch hats and begin a discussion of these books with students. And in fact, what the plaintiff, the plaintiff said during his interviews after this came up, that on, in fact, on one occasion, he allowed his student to read the book and he discussed the book with the student. And that is why. That's the question. So, so let's, let's take away Johnny the walrus and put in the photograph of Mount Hood. This teacher's got a photograph of Mount Hood and they, he comes in and they do that, they do their test taking. And after the test is over, he says, what mountain is that? That's Mount Hood. I hiked up there last year with my wife. Well, really? And they start talking about, you would you characterize the picture of Mount Hood and the subsequent discussion about Mount Hood because the student asked about it as public employee speech or as private speech? Well, I, I mean, the analogy is not perfect because in that case, a picture doesn't express a message. We have something here that expressly expresses a message. And one of the reasons. If I could jump account, it seems to me to kind of get to the end of it. It seems to me the answer is yes. They could tell him, look, when you're evaluating kids, evaluate the kid. Don't talk about Mount Hood. We're paying you to evaluate kids. We're not telling you, paying you to talk about geography. Seems to me for your position to win on the, we'll call it the Garcetti test, that that has to be the answer. The answer is we tell you what to say when you're dealing with kids and whether, so we don't only talk about Mount Hood, you can't talk about Hood. Once you start saying, well, this Mount Hood is different than this, then I think that's really tough for your position. So it seems to me if it's going to be a government employee speech, it's kind of all or nothing. So I just want to make sure, because the district court seemed to treat it as all or nothing. Seems to me today we're kind of getting into something other than that, which to me, I think is problematic for your position. Well, if, if, if it's employee speech, again, pickering allows viewpoint discrimination. And so I think where the court is getting at is can, can a school district pick and choose what message it wants its employees to convey? The answer is clearly yes. The answer is yes. Because for example, if the state of Oregon passed a version of Florida's law that banned pronouns on behalf of teachers, it seems to me the same analysis would apply, that the school district could, or I'll make it even easier. Let's say the state of Oregon passed a law saying teachers must have copies of he is he and she is he in classrooms. And a teacher wanted to bring a book that said the opposite of that. It seems to me under your case law that school could, could force them to take that other book down because it would be inconsistent with the district's policy. Schools get to control the messages that they want to convey. That's correct. Yes. And it seems to me that that's the core of your case. But once we start going down the road that I think is concerning Judge Van Dyke, then it gets really complicated really fast. I want to know if that is, is that the factually, is that what you think that the, the Intermountain Education Service, IES, did here was it completely said there will be no private speech in the form of declarations, et cetera? My first, my first point is that there is no viewpoint restriction of speech. This, the, the books were prohibited under an anti-discrimination policy. And that is a, I think I understand your argument on that, but, but, but I think I'm more interested in, we don't have much time. Do you think that factually what the school did here said there will be no personal declaration? We are, we are, we are only all the speeches, speech that you are giving on our behalf, or did they allow some private speech here? Well, again, Intermountain is not in control of these schools. So Intermountain didn't allow anything. Intermountain was only concerned with this employee and, and it, like Intermountain is not concerned with these other posters that are in the schools because that is not Intermountain's, Intermountain has no control over it. Because Intermountain is a education services district, so it just supplies specialists who provide certain functions to various schools, right? So it has no control whatsoever over any other declarations in the school. Right, the posters, whatever, those are, and the teachers, those are all within the control of the school districts. But did you, I mean, did Intermountain, so ignoring the school district, I'm not sure if we can because that's the environment he's in, but ignoring the school district, Intermountain has employees. Do you know if Intermountain's position was there will be no personal, none of the, the declarations, don't put up any personal declarations, all speech on our behalf? No, there's no blanket policy like that. The directive here was only limited to this one scenario. So with that, that's my time. All right, thank you. Thank you, counsel. I think we gave you five minutes. Thank you, Your Honor. So the reasonable observer test in POE is no longer good law. I think kind of the, the difficulties that come from that discussion show why, part of the reason that Kennedy replaced it, that it is looking at the scope, looking at speech that's done on behalf of the employer. So not everything that teachers say in school is employer speech. And that's what, that's, you know, what the Supreme Court said in Kennedy. So it cannot be the case that when Intermountain allows these personal declarations for all teachers, and it cannot come in after the fact and say because some students might reasonably perceive this to be the school district speech, that it is now in fact our speech. And so you can look. So you do disagree with the 11th Circuit then in Wood? No, because in, in Wood, it was a Florida law that said, you know, when you're, I don't know the exact text, but basically it's to the effect of when you're in a classroom, introducing yourself to students, you cannot convey this message. So if Intermountain had done that, I think that's a completely different case. But, but they haven't done that. But it I mean, it seems to me that that would be, it's hard for me to distinguish that from, from this case in terms of the school district having control over what is being said in, within the four walls of a, of a classroom or other setting that's mandatory for students to attend. Yeah, I think the school has control over it because as Kennedy said, it's a, the practical inquiry as to what the employer is paying the employee to do. And so in that case, you know, the 11th Circuit said this was speech she was employed to do when she's addressing students before class within the classroom setting. So, but, but that's not what it is here because here it's just the personal office decorations, which all teachers are, sorry, all employees had the freedom to do. And you can see that in our policy. I think it's at 197 and 198 in the record. It says the policies do not require IEM, I M E S D employees to ask permission before they present specific views or decorate the workplace. And then on the next page, Mr. Tice is not other than those subject to the directive. And then Mr. Tice does not have to ask permission to decorate his office or to take expressive acts. So I think that establishes on the front end that this is not what Intermountain is paying him to do. It's not paying him to put up the books. It's not paying him to take down the books. And so I think that goes to the point that there is no longer the reasonable observer test that. I have a little trouble with the test that you're asking us to apply. It was like, what are they paying him to do? Are they paying him to display these books or not display these books? They are paying him to evaluate students, to meet with students and communicate with students and evaluate students, correct? That's correct. Right. And within the scope, I mean, of that employment, right, when he is performing those job duties, is he not acting as a public employee? When he is performing those job duties, correct. So, and I'm not meaning like literally only when he's doing the test, but like during the time period in which he is engaged by the, I mean, his paycheck doesn't stop the minute the test ends, right? He's not being paid by the minute, right? He is acting as a public employee during the time period in place when he is meeting with in his office, he is acting as a public employee, correct? That's correct. But, okay. And then I understand that in Kennedy, there was a very fact specific decision of that, not literally everything in a public employee does is necessarily as a public employee, but they also didn't say everything they do or everything they say, right? That's not literally within, you know, the specifics of their job description is then private. I mean, I think there has to be some line drawing, right? There's some standard that we need to apply, which as far as I can tell is highly circumstantial about whether it would be perceived as private or public employee speech. Are you saying anything that they say that isn't literally carrying out any word that comes out of his mouth that isn't literally administering the test is then his private speech in that context? And what's, where would you draw the line? Yeah, so not, it doesn't have to literally be written down. Kennedy recognizes it's a practical inquiry, not just, you know, what is your literal job duties? You have to look at the facts as that looked at the facts, um, to your honor's previous point, coach Kennedy was in, in the office environment as a Supreme court in this court recognized he was still on the clock as this court recognized in its decision. Um, but that doesn't mean that everything he says was his official duty speech, same thing here. So what, what are the factors that this court looks to? Well, it's, it, it can't be the reasonable observer test. I disagree your honor respectfully that it is a reasonable observer test because Kennedy and then the fifth circuit in the recent decision makes clear it's not a visibility based test. So it's a practical inquiry. You look at the job duties, uh, the job description, if he's speaking pursuant to a government employee, uh, Garcetti government policy, sorry, Garcetti lays some of those factors out. Um, so, so that's what you would look to and the factors in those case. Um, but here, as I just read the language from the policy, it is personal speech and I see that I'm over time. So, yeah. All right. Thank you very much. Thank you much to counsel in this case. Thank you to all the amicus. We, we read those things. So we appreciate all the many filings in this case. Uh, this matter is submitted and judge sung and I will return tomorrow at one 30. All rise.
judges: OWENS, VANDYKE, SUNG